**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Duraid Hussein,<br><br>  Defendant. | No. CR-17-01351-001-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Duraid Hussein's Motion for New Trial, (Doc. 153), and the Government's Motion to Seal, filed under seal, (Doc. 160). For the following reasons, Defendant's Motion is denied, and the Government's Motion is granted.

## BACKGROUND

On October 11, 2017, a grand jury indicted Defendant, a convicted felon, with one count of knowingly possessing a firearm. (Doc. 3.) Defendant's charges stem from an FBI investigation which involved the use of a Confidential Human Source (the "CHS"). (Doc. 159 at 4.)

Trial commenced on December 4, 2018. (Doc. 95.) The CHS, the CHS's handler FBI Case Agent Scott Stephenson, and FBI Task Force Officer Daniel Mellentine testified at trial. The jury found Defendant guilty of one count of felon in possession of a firearm on December 6, 2018. (Doc. 102.) The Court sentenced Defendant on May 7, 2019 to a 54-month sentence. (Doc. 124.)

On June 29, 2020, the Government provided a disclosure letter (the "Letter") to Defendant. (Doc. 159 at 8.) The Letter, as summarized by the Government, reported the following information about the CHS:

> **FBI Handling Agent Brittany Stephenson** (did not testify at defendant's trial): In March 2019, the FBI Handler of the CHS reported to the USAO that the CHS had acquired a medical marijuana card. In April 2019, the CHS's handler reported to the USAO that she did not know whether the CHS used marijuana, but assumed the CHS probably did since the CHS had a medical marijuana card.
>
> **FBI Case Agent Scott Stephenson**: On May 14, 2019, the FBI case agent reported to the USAO that he had learned about the CHS's acquisition of a marijuana card around the time the investigation ended or sometime afterward. The case agent indicated that because the CHS had been transferred or was being transferred to another agent, the case agent did not inquire about the CHS's marijuana use at that time. When asked if he had any reason to believe the CHS was using marijuana during the investigation, the case agent reported to the USAO that he had smelled the faint odor of marijuana around the CHS, but did not ask if the CHS had used marijuana and assumed the odor had come from another source, not the CHS.
>
> **CHS's Attorney Brad Miller**: On May 13, 2019, the CHS's attorney reported to the USAO that the CHS had a medical marijuana card for pain and had been a daily user of marijuana for several years. The CHS's attorney stated that the CHS used once per day in the morning, was using medical marijuana daily during the entirety of the investigation and had continued to use since the investigation ended. The attorney also reported that the CHS used marijuana on the day that the CHS testified in the Duraid Hussein trial. On July 23, 2019, the CHS's attorney told agents that the CHS never arrived to a meeting exhibiting any signs of marijuana usage.
>
> **The CHS**: On May 15, 2019, the CHS told agents that the CHS smoked marijuana often, usually right around 5:00 am when the CHS wakes up. The CHS could not recall then whether the CHS smoked marijuana the morning that the CHS testified in the Duraid Hussein trial. The CHS told agents that the CHS believed that marijuana did not affect their ability to testify. On July 23, 2019, the CHS told agents that the CHS smoked marijuana approximately three times per week since obtaining prescription for marijuana, usually doing so after getting home from work. When asked how much the CHS smoked prior to obtaining the prescription, the CHS said they did not smoke as often because it was harder to get. On July 23, 2019, the CHS stated again to agents that they did not recollect smoking marijuana on the morning of the Duraid Hussein trial. On January 13, 2020, the CHS stated to the USAO that the CHS first obtained a medical marijuana card in June 2018 and that the

> CHS was not using marijuana prior to obtaining a medical marijuana card. On January 22, 2020, the CHS testified in [another case] that they had a medical marijuana card and they used marijuana. However, the CHS testified that they did not use marijuana in 2017 and did not use it during the investigation. The CHS also testified that they had discussed the medical marijuana card and use with CHS's attorney. The CHS was not asked during testimony in the [other] case whether the CHS had used marijuana on the day of their testimony in the Duraid Hussein trial.

*Id.* at 8–10.  Defendant moves for a new trial based on the information in the Letter.

## DISCUSSION

### I.   Motion to Seal

The Government seeks an order sealing Exhibits S1-S6 on the grounds that the documents discuss the CHS and precaution is necessary to protect their safety.  Finding good cause, the Court grants the Government's Motion.

### II.  Motion for New Trial

The parties dispute whether Defendant's Motion is governed by the standard in *Brady v. Maryland*, 373 U.S. 83 (1963) or Federal Rule of Criminal Procedure 33.  *See also United States v. Miller*, 953 F.3d 1095, 1107 nn.17,18 (9th Cir. 2020) (deciding not to reach the question of whether *Brady* or Rule 33's standard applies when a motion for new trial is based on a *Brady* violation).  Regardless of which standard applies, Defendant's Motion fails.

To prove a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  *Brady* only applies to evidence that the Government knew about prior to trial.  *Martinez v. Ryan*, 926 F.3d 1215, 1228 (9th Cir. 2019).  Therefore, the only potential *Brady* evidence here is knowledge of the medical marijuana card and Agent Scott Stephenson's detection of a faint smell of marijuana odor around the CHS.  *See United States v. Price*, 566 F.3d 900, 908 (9th Cir. 2009) ("*Brady* suppression occurs when the government fails to turn over even evidence

that is known only to police investigators and not to the prosecutor.") (internal quotations and citation omitted).

Whether the Government's failure to disclose this information is prejudicial centers on whether "admission of the suppressed evidence would have created a reasonable probability of a different result." *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (internal quotations and citation omitted). A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome" of the trial. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

At trial, the Government had to prove, beyond a reasonable doubt, that Defendant knowingly possessed a firearm. "A showing of actual, constructive or joint possession is sufficient to establish the possession element of a section 922(g) offense." *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001). "To prove constructive possession, the government must prove a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the firearms." *United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir. 1993) (quotation marks and alterations omitted). Possession may be proven by circumstantial evidence alone. *United States v. Thongsy*, 577 F.3d 1036, 1041 (9th Cir. 2009). In line with this case law, the Court instructed the jury that "[a] person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it" and that "[m]ore than one person can be in possession of something if each knows of its presence and has the power and intention to control it." (Doc. 97 at 14.)

Even if the jury chose to discredit the CHS's testimony because of the supressed evidence, the Government introduced evidence beyond CHS's testimony establishing that Defendant knowingly possessed a firearm.[1] On July 7, 2017, the CHS met with Defendant

---

[1] Indeed, Defendant impeached the CHS's testimony on several grounds at trial. Defendant's counsel questioned CHS about his status as a convicted felon, his former membership in a gang, his financial compensation for working with the FBI, his grant of immunity, and an incident where the CHS handled a firearm without FBI permission. (Doc. 159 at 7.) Despite this impeachment evidence, arguably more favorable to the Defendant than the marijuana use, the jury found Defendant guilty.

and Defendant's brother to buy a firearm. Agent Scott Stephenson testified that, prior to the beginning of that meeting, he gave the CHS an audio and video recording device and $450 to purchase the firearm. (Doc. 141 at 168–69.) He testified that he saw the CHS get into a car with Defendant and his brother. *Id.* at 170–71. Additionally, the Government admitted a screenshot from video obtained from the CHS during the July 7 meeting, which Agent Scott Stephenson identified as Defendant in the driver's seat of a car. *Id.* at 185–86.

During the meeting, Defendant introduced the CHS to his brother. (Doc. 159-5 at 13.) His brother stated, "Here you go, bro. That's a .45, CBS 5." *Id.* Defendant and his brother then discussed certain features of the gun. *Id.* Defendant also told the CHS that he can "get [the CHS] more shit, if [the CHS] want." *Id.* Agent Scott Stephenson testified that after the transaction he obtained the firearm from the CHS and did not find the $450. (Doc. 141 at 172.)

Later that same day, the CHS spoke to Defendant on the phone. The CHS told the Defendant, "I want to thank you for finally coming through for something on the whippy." (Doc. 159-5 at 17.) Defendant responded, "Oh. No problem, man." *Id.*

This evidence, which shows Defendant's substantial involvement with the sale of a firearm, indicates that Defendant exercised dominion and control over the firearm. Accordingly, admission of the suppressed evidence would not have created a reasonable probability of a different result.

Application of Rule 33's standard arrives at the same conclusion. To obtain a new trial based on newly discovered evidence under Rule 33, "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005). Even if all the newly discovered evidence was admitted in a new trial, it is not probable that Defendant would be acquitted. That evidence is "merely impeaching." And as already discussed, there is evidence beyond

CHS's testimony that Defendant knowingly possessed the firearm. That evidence demonstrates that the evidence of marijuana use by the witness would probably not result in acquittal at trial. Therefore, Defendant's motion for a new trial is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Duraid Hussein's Motion for New Trial (Doc. 153) is **DENIED.**

**IT IS FURTHER ORDERED** that the Government's Motion to Seal, filed under seal, (Doc. 160), is **GRANTED.** The Clerk of Court is directed to file under seal lodged Doc. 161.

Dated this 17th day of August, 2021.

_____
G. Murray Snow
Chief United States District Judge